875 So.2d 659 (2004)
Kathy ROLLISON, Appellant,
v.
CITY OF KEY WEST, Appellee.
No. 3D02-2644.
District Court of Appeal of Florida, Third District.
April 14, 2004.
Rehearing and Rehearing Denied June 30, 2004.
Cooper & Walinski, P.A., and Joseph P. Thacker, for appellant.
David J. Audlin, Jr.; Robert Tischenkel, for appellee.
Jerry Coleman as Amicus Curiae.
Before COPE, GERSTEN and SHEVIN, JJ.
Rehearing and Rehearing En Banc Denied June 30, 2004.
COPE, J.
Kathy Rollison appeals a declaratory judgment in favor of the City of Key West. *660 As we conclude that Ms. Rollison's use of her property was lawful at the times relevant here, we reverse the judgment.

I.
In 1996 Ms. Rollison and her husband began looking for a vacation home in Key West. They wanted to buy a condominium property which they could use for vacation purposes. In addition, they wished to be able to use the property part of the year for short term rentals to help offset the expense of owning it.
The Rollisons located Unit 271 in the Shipyard Condominium in the Truman Annex neighborhood. The Truman Annex consists of property previously owned by the United States Navy. The Navy sold the property and it was redeveloped as a planned redevelopment district. The district includes commercial and residential areas and a marina.
Prior to buying Unit 271, the Rollisons determined that under the condominium governing documents, weekly rentals are allowed. The previous owner had engaged in short term rentals and the Rollisons obtained a rental history for the unit.
The Rollisons contacted the City Attorney to be sure that the City would allow the unit to be rented. The City Attorney stated that the property could be used for short term rentals so long as it was not rented for more than twenty-five weeks per year. The Rollisons were also advised that such rental use requires a non-transient occupational license from the City of Key West.
The Rollisons purchased the property in 1997 and, as planned, used it as a vacation home for part of the year. They obtained a non-transient occupational license and rented the property approximately sixteen weeks per year.
In 1998, the City adopted its City of Key West Land Development Regulations (LDRs). The LDRs replaced the existing zoning code and, according to the parties, eliminated the special definition of "transient housing" which had previously applied to the Truman Annex Planned Redevelopment District. See City of Key West Ordinances 97-10, 97-20, 98-14.
Also in 1998 the City adopted Ordinance 98-31, governing transient living accommodations in residential dwellings. This was intended "to halt the use of residences for transient purposes in order to preserve the residential character of neighborhoods." City of Key West Ordinance 98-31, § 2.[1] After Ordinance 98-31 was adopted, the City took the position that Ms. Rollison could no longer engage in short-term rentals, and threatened to impose fines if she did so.
In 1999, Ms. Rollison filed the declaratory judgment action which is now before us. She sought a declaration that her short-terms rentals of Unit 271 constituted a lawful nonconforming use. A nonconforming use is a "[l]and use that is impermissible under current zoning restrictions but that is allowed because the use existed lawfully before the restrictions took effect." Black's Law Dictionary 1540 (7th ed.1999).
Ms. Rollison requested a determination that her short-term rentals were a lawful use of her property prior to the adoption of the LDRs in 1998, and subsequent Zoning Code amendments. See Key West *661 Code §§ 122-26, 122-27, 122-32. See generally 7 Fla. Jur.2d Building, Zoning and Land Controls § 197 (2004); 1 Kenneth H. Young, Anderson's American Law of Zoning § 6.08 (4th ed.1996); 4 Edward H. Ziegler, Jr., Rathkopf's The Law of Planning and Zoning § 72:1 (2002).
The City counterclaimed, seeking a declaration that such short-term rentals were unlawful at the time Ms. Rollison bought the property.
After a bench trial, the court ruled in favor of the City and enjoined Ms. Rollison from any further short-term rentals. Ms. Rollison has appealed.

II.
The Truman Annex was developed as a Planned Redevelopment District. The framework for such a district was set forth in former subsection 35.07(14) of the Key West Code.[2]
Within the framework of that ordinance, the City negotiated a Development Agreement with developer Pritam Singh for the redevelopment of the Truman Annex. Redevelopment was carried out under the Agreement and included residential, commercial, and marina property.
Among the definitions pertinent here are:
Commercial area. Areas containing predominately retail trade and services, transient housing, food service establishments, museums, galleries and marinas, office space and similar uses, including accessory uses.
....
Residential area. An area containing predominantly single-family, two-family or multiple-family dwelling units, including accessory uses.
Transient housing is commercially operated housing principally available to short term visitors for less than twenty-eight (28) days; transient housing includes hotels, motels, guest houses, and time shares....
Former Key West Code § 35.07(14)(b) (emphasis added).
Under these definitions, transient housing consists of hotels, motels, guest houses, and time shares. On the mainland portion of Truman Annex, there was one such area of transient housing, the conference center.[3]
The Shipyard Condominium was part of the residential area. It was not a designated transient unit.[4]
After the Shipyard Condominium was built in 1991, unit owners and real estate agents posed the question to the City whether the zoning code allowed rentals of the condominiums.
The City's answer came in two parts, depending on whether the rental was long-term or short-term.
Long-term rentals. For convenience, we will refer to rentals that are month-to-month or longer as "long-term rentals."
*662 The City has consistently taken the position that if the rental period is monthly or longer, then the rental is permissible. There is nothing in the City Code which bans such rentals.
Short-term rentals. With regard to short-term rentals, the City evolved what came to be known as the "50% rule." This was an interpretation of the definition of "transient housing," quoted above.
The City's interpretation was that a Shipyard Condominium unit could be rented to short-term visitors so long as the rental weeks amounted to less than fifty percent of the year. Thus, if an owner engaged in weekly rentals, this would allow the unit to be rented up to twenty-five weeks per year.
The key to the City's interpretation was the phrase "principally available" contained in the "transient housing" definition. Under that definition, "transient housing is commercially operated housing principally available to short term visitors for less than twenty-eight (28) days...." Id. (emphasis added).
The City reasoned that if the rental use was less than fifty percent of the year, the condominium unit was not "principally available to short-term visitors," id., and therefore such short-term rentals did not constitute "transient housing" as defined in the Planned Redevelopment District ordinance.[5]

III.
We conclude that Ms. Rollison was entitled to judgment in her favor. The evidence established that Ms. Rollison complied with the 50% rule and obtained the required occupational license. She thus established that she had a lawful nonconforming use.
The evidence showed that the 50% rule evolved over a period of several years and became the accepted administrative interpretation of the above-cited portions of the Zoning Code. The City had a specifically stated policy whereby short-term rentals would be allowed if this use amounted to less than 50% of the year, and the owner obtained the required non-transient occupational license.[6] The City's enforcement activities were governed by this rule. So long as an owner complied with the 50% rule and obtained the required license, the owner was deemed to be in compliance with the Code. The interpretation given to the Rollisons by the city attorney was consistent with the position given to realtors and other owners by the responsible members of the city administration. See 1 Kenneth H. Young, Anderson's American Law of Zoning § 6.08; see also Key West Code § 122-1371(a).
*663 As we interpret the final judgment, the trial court was concerned that the 50% rule was never presented to the City Commission for approval. The trial court took the view that absent such approval, the city administration's interpretation of the Code could not be viewed as authoritative or binding. We respectfully disagree.
The 50% rule was not the creation of a new ordinance or rule of law. It was instead an interpretation of the existing Key West ordinances. Interpretation was necessary for licensing, code enforcement, and in order to inform citizens regarding what uses may be made of their property. See 1 Kenneth H. Young, Anderson's American Law of Zoning §§ 6.08, 6.11, 6.13; Paloumbis v. City of Miami Beach, 840 So.2d 297, 298-99 (Fla. 3d DCA), review denied, 848 So.2d 1153 (2003) (footnote and citation omitted) ("administrative interpretation is entitled to judicial deference as long as it is within the range of possible permissible interpretations.")
The City argues that the 50% rule was contrary to the language of the Zoning Code. We disagree. The 50% rule was a permissible interpretation of the applicable city code provisions.[7]

IV.
In conclusion, Ms. Rollison established that her short-term rentals of Unit 271 constitute a lawful nonconforming use. It follows that her use is "grandfathered in" because her use existed lawfully before the current restrictions on short-term rentals took effect.
Ms. Rollison established this because:
(1) She was actively engaged in short-term rentals at Unit 271 prior to the 1998 adoption of LDRs, and the subsequent Zoning Code amendments;
(2) Her rentals complied with the 50% rule because she rented the unit for less than twenty-six weeks per year; and
(3) She obtained the occupational license required at that time, the nontransient occupational license.
For the stated reasons, we reverse the judgment now before us and remand the cause for entry of judgment in Ms. Rollison's favor.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] This court invalidated Ordinance 98-31 on account of the City's noncompliance with the notice provisions of the statutes relating to ordinance adoption. Coleman v. City of Key West, 807 So.2d 84, 85-86 (Fla. 3d DCA 2001), review denied, 828 So.2d 385 (Fla. 2002). The ordinance was subsequently readopted in 2002 as Ordinance 02-06. It is codified as section 122-1371 of the Key West Code of Ordinances ("Key West Code").
[2] Although there have been subsequent zoning amendments and a re-codification, former subsection 35.07(14) continues to govern certain aspects of the Truman Annex Planned Redevelopment District. See Key West Code § 107-9.
[3] Additional transient housing was provided on Fuel Tank Island.
[4] Although not relevant here, the initial designation for the Shipyard Condominium was "affordable housing." The condominium units had to meet, for a five year period, the condition of "[h]aving a sale price less than or equal to three (3) times the median household income in Key West." Id. Because the five-year period expired, the "affordable housing" designation is not important for the present litigation.
[5] Under this interpretation, a unit owner would not be allowed to make short term rentals for more than half the year. To do so would make the unit "transient housing" because it would be "principally available to short-term visitors." Id. This would not be allowed because the Shipyard Condominium was not designated as transient housing within the Truman Annex Planned Redevelopment District.
[6] The trial court commented, and we agree, that the City's "transient" and "non-transient" terminology on its occupational licenses was confusing. That is so because both types of licenses were applicable to short-term rentals and in a colloquial sense "short-term rentals" and "transient rentals" sound synonymous.

As used in this context, however, "transient housing" is a term of art. If housing is rented short-term for more than fifty percent of the year, then under the 50% rule it is "transient housing" and required a transient occupational license. If such housing was rented short-term for less than fifty percent of the year, then under the 50% rule it was not "transient housing" and thus required a non-transient occupational license.
[7] The City also relies on the administrative order issued by the Florida Department of Community Affairs in Abbe v. Department of Community Affairs, Final Order No. DCA00-GM297 (Florida Department of Community Affairs March 13, 2001). That order does not address or decide the issue now before us.