CORTIÑAS, J.
Russell and Linda Allen and several other individual property owners (collectively the “Owners”) seek review of the trial court’s final judgment denying their claims for declaratory judgment and injunctive relief against the City of Key West (the “City”). Because Rollison v. City of Key West, 875 So.2d 659 (Fla. 3d DCA 2004), is controlling, we reverse.
The Owners purchased their respective properties in the City with the intent to use them as short-term rentals for a portion of each year in order to offset their purchase costs. At the time the Owners purchased their properties, the City’s 1986 Growth Management Ordinance (“GMO”) was in effect as part of the City’s Land Development Regulations (“LDRs”). The GMO, which applied to each of the Owners, contained the following definition:
Transient housing is commercially operated housing, principally available to short-term visitors; transient housing includes hotels, motels, guest houses, and time shares, and other housing available for rent for fewer than twenty-eight days.
City of Key West, Fla., Code, Ch. 24½ § (2)(F) (1986) (emphasis added). In 1998, the City adopted LDRs that eliminated the previous definition of “transient housing.”
Prior to the enactment of the 1998 LDRs, the Owners or their predecessors used their respective properties for short-term rentals for less than half of any given year. Believing their properties were not “transient housing,” as defined pre-1998, the Owners or their predecessors secured necessary non-transient occupational licenses. After the City denied the Owners’ requests to have the short-term rental use deemed a “grandfathered in,” lawful, nonconforming use, the Owners filed the instant suit for declaratory and injunctive relief, and the case was eventually tried without a jury.
At trial, the parties disputed the City’s policy concerning transient short-term rental properties leading up to the adoption of the 1998 LDRs. Testimony demonstrated that, for a time, Key West property owners and managers were interpreting the “principally available” language to mean that a property could not be considered transient if it was rented for less than fifty percent (50%) of the year. This became known as the “50% rule.”[1] Evidence was presented that in June 1997, Carolyn Walker (“Walker”), who had been the City’s chief licensing official since 1987, sent out a memorandum setting forth the City’s “interim policy” on the 50% rule. Walker testified that the memorandum was sent at the direction of then-City attorney Robert Tischenkel (“Tischenkel”). *318 In September 1997, the City passed Ordinance 97-20, which modified the definition of “transient housing” and removed the “principally available” language. See City of Key West, Fla., Code, Ch. 86, § 9 (1997). According to Walker, Ordinance 97-20 effectively ended the approximately three-month-long “interim policy,” although there was no official termination date. The Department of Community Affairs (the “Department”), however, objected to certain provisions in Ordinance 97-20, and, in 1998, the City passed Ordinance 98-14, which addressed the Department’s concerns, and enacted the new LDRs.[2] See id.; City of Key West, Fla., Code, Ch. 86, § 1 (1998).
The City later passed Ordinance 98-16 in an effort to directly regulate transient rentals. City of Key West, Fla., Code, Ch. 86, § 9 (1998). The Department rejected Ordinance 98-16 in July 1998, and subsequently, the City passed ordinance 98-31, which contained the same relevant language as Ordinance 98-16. Id. However, in 2001, this Court declared Ordinance 98-31 null and void due to improper notice. See Coleman v. City of Key West, 807 So.2d 84 (Fla. 3d DCA 2001). Thereafter, Ordinance 02-06, which satisfied all notice requirements and contained identical language as Ordinance 98-31, became effective in September 2003. City of Key West, Fla., Code, Ch. 86, § 9 (2002).
Tellingly, Ordinances 98-16, 98-31, and 02-06 all contained the same pertinent language which reads as follows:
In 1986, the City enacted former zoning code section 35.24(44) which provided the following definition of a transient living accommodation: “Commercially operated housing principally available to short-term visitors for less than twenty-eight (28) days.” This definition shall herein be referred to as the “Former Transient Definition.”) Some property owners and developers interpreted the Former Transient Definition to mean that an owner could rent his or her residential dwelling for less than half the year without the dwelling losing its residential status, and therefore without the need for a City-issued transient license (so long as State of Florida licensing requirements were met). This interpretation went unchallenged by the City.
See City of Key West, Fla., Code, Ch. 86, § 9 (1998); City of Key West, Fla., Code, Ch. 86, § 9 (2002) (emphasis added). Furthermore, evidence at trial did not demonstrate that any enforcement actions were taken by the City with respect to short-term rentals being conducted pursuant to the 50% rule prior to the effective date of Ordinance 02-06, and, more specifically, no such actions were taken against the Owners.
In Rollison, we reversed the declaratory judgment in favor of the City and found that the property owner in that case was entitled to have her lawful nonconforming use “grandfathered in” because the property use lawfully existed before the existing restrictions of short-term rentals became effective. Rollison, 875 So.2d at 663. We found that Ms. Rollison established that her rental property constituted a lawful nonconforming use because:
(1) She was actively engaged in short-term rentals at Unit 271 prior to the 1998 adoption of the LDRs, and the subsequent Zoning Code amendments;
(2) Her rentals complied with the 50% rule because she rented the unit for less than twenty-six weeks per year; and
*319 (3) She obtained the occupational license required at that time, the nontransient occupational license.

Id.

Similarly, in our case, all of the properties were purchased by the Owners at a time when the 1986 GMO was in effect. Moreover, the Owners presented evidence that either they, or their predecessors, 1) had engaged in short-term rentals of their units prior to the enactment of the 1998 LDRs and subsequent zoning code amendments, 2) complied with the 50% rule, and 3) obtained non-transient occupational licenses. In ruling in favor of the City, the trial court found that the Rollison decision was limited in applicability to properties within the Truman Annex, and therefore, was inapplicable to the Owners’ properties. We disagree.
The Truman Annex was a Planned Redevelopment District and subject to a definition of transient housing containing the same “principally available” language in the GMO which governed the Owners’ properties.[3] Furthermore, trial testimony by both Walker and Tischenkel demonstrated that, prior to the Rollison decision, no distinction was made between Truman Annex properties and non-Truman Annex Properties. While we are cognizant that the plaintiff in Rollison sought and received confirmation from the City that she could rent her unit out short-term, we do not find this distinction to be sufficient to defeat the Owners’ claims. Additionally, although Ms. Rollison purchased her unit within the purported three-month period when the City’s “interim policy” was in effect, we note that the Rollison decision does not suggest either that the time of purchase was critical nor that the actual rental of Rollison’s property occurred solely during that period. See Rollison, 875 So.2d 659. Moreover, there is evidence in the record, including testimony and the language of the ordinances themselves, demonstrating that the 50% rule “went unchallenged by the City.”
We find that our interpretation and application of the 50% rule in Rollison was not limited solely to properties within the Truman Annex. Instead, as in Rollison, because the Owners or their predecessors 1) had engaged in short-term rental of their units prior to the enactment of the 1998 LDRs at a time when their rentals met the definition of non-tránsient housing under the City code, 2) complied with the 50% rule, and 3) obtained non-transient occupational licenses, the logic and holding of our Rollison decision applies to this case. Accordingly, we reverse the final judgment denying the Owners’ claims for declaratory relief and injunction. We find no merit in the City’s cross-appeal challenging the Owners’ claims on statute of limitations grounds.
Reversed and remanded.

. Much of the dispute between the Owners and the City revolves around the “50% rule.” As we set forth in Rollison:
[T]ransient housing is a term of art. If housing is rented short-term for more than fifty percent of the year, then under the 50% rule it is "transient housing” and required a transient occupational license. If such housing was rented short-term for less than fifty percent of the year, then under the 50% rulé it was not "transient housing” and this required a non-transient occupational license.
Rollison 875 So.2d at 662, n6.

. At trial, Tischenkel testified that although Ordinance 97-20 created a definition for "transient rentals,” it had no actual, corresponding regulation.

. More specifically, the pertinent portion of the former City of Key West Code of Ordinances section 35.07(14)03), which applied to Planned Redevelopment Districts, such as the Truman Annex, provided as follows:
Transient Housing is commercially operated housing principally available to short term visitors for less than twenty-eight (28) days; transient housing includes hotels, motels, guest houses, and time shares. A transient housing unit may consist of up to two (2) hotel “locked-out” rooms (i.e., two (2) “keys” per unit).
City of Key West, Fla., Code, Ch. 35, § 7(14)(b) (emphasis added).